IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

YALE and ANNIE SLOCUM, Individu- §
ally and as Representatives of   §
The Estate of Wesley Slocum,     §
And CHERYL SLOCUM, Individually  §
and as Next Friend of W.S.,      §
                                 §
        Plaintiff,               §
                                 §
VS.                              §    CIVIL ACTION H-11-486
                                 §
BRAD LIVINGTON, TROY SIMPSON,    §
and OWEN MURRAY, M.D.,           §
                                 §
        Defendant.               §

## OPINION AND ORDER OF DISMISSAL

Pending before the Court in the above referenced wrongful death action, seeking damages for cruel and unusual punishment in the alleged failure to provide insulin to inmate Wesley Slocum in July 2010, are the following opposed motions:  (1) Defendant Medical Director of the Pam Lychner State Jail Dr. Owen J. Murray's ("Murray's") motion to dismiss based on lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (instrument #25)[1]; (2) Defendants Director of Texas Department of Corrections Brad Livingston ("Livingston's") and Senior Warden of the Pam Lychner State Jail Troy Simpson's ("Simpson's") motion to dismiss based on lack of subject matter jurisdiction and failure to state a claim

---

[1] Murray's motion identifies himself as Director of the University of Texas Medical Branch ("UTMB").  #25 at p.1.

-1-

under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (#27); and (3) a motion for nonsuit (#44), filed by Plaintiffs Yale and Annie Slocum, Individually and as Representatives of the Estate of Wesley Slocum and Cheryl Slocum, Individually and as Next Friend of W.S., a Minor Child, all survivors of Wesley Slocum, Deceased.

This case was previously stayed by the Court until the Court could review and resolve the threshold immunity issues raised in the motions to dismiss.  The Court now lifts the stay and addresses the motions.

## Allegations of the Second Amended Complaint

Plaintiffs complain that on July 14, 2010, Wesley Slocum, a known insulin-dependent diabetic, was incarcerated at the Pam Lychner State Jail.  They assert that on that date employees of Defendants, who knew or in the exercise of reasonable care should have known, that the prisoner required insulin, failed to furnish and intentionally and/or recklessly and with conscious indifference to the prisoner's health and safety, withheld insulin from Wesley Slocum while he was in their custody, thereby causing his slow and painful death.   This conduct of Defendants' employees, acting under regulations, policies, and customs of the State of Texas with indifference to Slocum's constitutional rights, constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and of 42 U.S.C. § 1983.  Plaintiffs further charge Defendants with a failure to adequately train and

supervise employees and with encouraging them to ignore the constitutional rights of inmates similarly situated to Wesley Slocum, including Wesley Slocum.  They contend that the failure to render necessary care was willful, deliberate, and malicious, as well as in reckless disregard of the constitutional rights of Wesley Slocum.

### Standards of Review

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3).  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1*, quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)(*citing* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1350 (1971))(district court should consider Rule 12(b)(1) challenge before other defenses.  The reasons behind this practice are to preclude courts from issuing

-3-

advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming*, 281 F.3d at 161.

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion. *Ramming*, 281 F.3d at 161. In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion

without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson*, 2008 WL 4692392 at *10, *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

-5-

In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[2] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain

---

[2] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*.  To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").

Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

**Relevant Substantive Law**

-10-

Title 42 U.S.C. § 1983[3] provides a remedy to a party who, as the result of state action, suffers a derivation of his rights privileges or immunities secured by the Constitution or the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Thus to state a claim under the statute, a plaintiff must prove (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by one acting under color of state law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-53 (5th Cir. 2005).

A plaintiff alleging a § 1983 cause of action against government officials in their individual capacities must make specific factual allegations that support each individual's role in the constitutional deprivation at issue. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996), and *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). The generic notice pleading requirements of Federal Rule of Civil Procedure 8 ("a short and plain statement of the claim that will give the defendant fair

_____

[3] Section 1983 provides in relevant part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

notice of what the plaintiff's claim is and the grounds upon which it rests") apply to suits against individual defendants in their official capacities. *Id.*, *citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), and *Anderson*, 184 F.3d at 443.

"Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate medical . . . care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006), *quoting Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs and thereby cause an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(the Eighth Amendment's prohibition against cruel and unusual punishment protects an inmate from inadequate medical care only if he alleges "acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"). A "serious medical need" is one which is "so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 464 F.3d 339, 345 n.12 (5th Cir. 2006). Mere negligence or inadvertent failure to provide adequate medical care is insufficient to impose

liability; the facts must clearly show deliberate indifference, wanton actions without regard to the rights of others. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A prison official acts with deliberate indifference only if "he knows of and disregards excessive risk to inmate health or safety" by failing to take reasonable measures to abate that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)(applying *Farmer* to denial of inmate medical care); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Because the deliberate indifference standard has both an objective and subjective component, the prisoner must demonstrate that the official was be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and also that he actually drew that inference. *Farmer*, 511 U.S. at 834, 837. Acts of negligence, neglect or medical malpractice are not sufficient to give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Unsuccessful medical treatment or a prisoner's disagreement with his medical treatment does not constitute a claim for deliberate indifference to serious medical needs under the Eighth Amendment absent exceptional circumstances. *Gobert*, 463 F.3d at 346. Delay in medical care can only constitute a violation under the Eighth Amendment if there has been deliberate indifference causing substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). To prove deliberate indifference a

-13-

plaintiff must submit proof that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs,'" "'an extremely high standard to meet.'"   *Gobert*, 463 F.3d at 346 (citations omitted); *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999).

Proof of an individual defendant's personal involvement in the alleged misconduct is a prerequisite to his liability on a claim for damages under § 1983.  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981)(A state actor may be liable under § 1983 only if he was "personally involved in the acts causing the deprivation of [plaintiff's] constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."); *Watson v. Interstate Fire 7 Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980)("Liability may be found only if there is personal involvement of the officer being sued.").   Thus § 1983 does not provide for liability of a supervisory official under a theory of *respondeat superior* or vicarious liability simply because an employee or subordinate allegedly violated a plaintiff's constitutional rights.  *Douthit*, 641 F.2d at 346; *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *Stewart*, 174 F.3d at 536.

"A supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate 'when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998), *quoting Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).  To hold a supervisory official liable under this theory,[4] a plaintiff must allege facts showing that the supervisor's conduct denied the defendant his constitutional rights, i.e., the plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brenoettsy*, 158 F.3d at 911-12, *citing Hinshaw v Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)[, *abrogated on other grounds as recognized in Martin v. Thomas*, 973 F.2d 449, 454 n.5 (5th Cir. 1992)]; *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380-81 (5th Cir. 2005).  To establish deliberate indifference, a plaintiff must plead facts showing that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that the official also drew that inference.  *Farmers*, 511 U.S. at 837.

---

[4] Plaintiffs have not sued a local government entity or municipality for failure to train and/or supervise, but only individual defendants in their supervisory role.

Deliberate indifference is more than negligence or gross negligence. *Estate of Davis*, 406 F.3d at 381. Inept, erroneous, ineffective, or negligent actions or decisions by officials do not constitute deliberate indifference nor do they divest the officials of qualified immunity. *Id.* To meet the "stringent standard of fault" for deliberate indifference, a "plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* at 381. "'[P]roof of a single . . . incident ordinarily is insufficient' for liability." *Id.* at 383, *quoting Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *Id.* at 383. Furthermore "a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." *Id.*

Qualified immunity, an affirmative defense, protects government officials in their individual capacities who are performing discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

-16-

457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, \_\_\_,
129 S. Ct. 808, 815 (2009).  Thus the Court examines whether the
"officer's conduct violated a constitutional right," as well as
"whether the right was clearly established" at the time of the
conduct; either prong may be addressed first. *Saucier v. Katz*, 533
U.S. 194, 201 (2001); *Pearson*, 129 S. Ct. at 808.  A right is
clearly established when "the contours of the right [are]
sufficiently clear [such] that a reasonable official would
understand that what he is doing violated that right." *Werneck v.
Garcia*, 591 F.2d 386, 392 (5th Cir. 2009)(citations omitted); *Kinney
v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004), *quoting Anderson
v. Creighton*, 483 U.S. 635, 640 (1987)).  *See also Freeman v. Gore*,
483 F.3d 404, 411 (5th Cir. 2007)(the court applies an objective
standard "based on the viewpoint of a reasonable official in light
of the information available to the defendant and the law that was
clearly established at the time of defendant's actions.").  "The
'clearly established' standard does not mean that official's
conduct is protected by qualified immunity unless 'the very action
in question has previously been held unlawful.'"  *Id.* at 350,
*quoting Anderson*, 483 U.S. at 640.  "Where no controlling authority
specifically prohibits a defendant's conduct, and when the federal
circuit courts are split on the issue, the law cannot be said to be
clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th
Cir. 2011), *petitions for cert. filed*, 80 BNA USLWA 2281 (Dec. 22,

2011) and 3459 (Jan. 26, 2012).  Officials who act reasonably but mistakenly are entitled to qualified immunity; the defense protects all government employees but "the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001).  The officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(*en banc*).

Although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To meet this burden the plaintiff must allege facts showing that the defendants committed a constitutional violation under the current law and that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the challenged actions.  *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

-18-

In *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985), the Fifth Circuit held that when a defendant-official in his individual capacity raises a qualified immunity defense, a heightened pleading standard must be met by Plaintiff to show with factual detail and particularity why the defendant official cannot maintain the qualified immunity defense. The Fifth Circuit further decided that it would not apply *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)(striking down the heightened pleading requirements in § 1983 actions against municipalities) to claims against individual government officials in their individual capacities, regarding which "we are still bound by *Elliott* and its progeny." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). *See also Schultea v. Wood*, 47 F.3d 1427, 1429-34 (5th Cir. 1995)(*en banc*)(discussing development of qualified immunity defense and pleading rules)("When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply."); *Floyd v. City of Kenner, La.*, 351 Fed. App'x 890, 893 & n.2 (5th Cir. 2009).

-19-

In *Morgan v. Hubert*, 335 Fed. App'x 466, 472-73 (5th Cir. 2009), the Fifth Circuit reviewed *Schultea*'s standard (requiring plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's contact at the time of the alleged acts"). The panel pointed to the reasoning in *Schultea* in requiring a heightened pleading standard in the face of a defendant's assertion of qualified immunity:

> We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions. Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants* [emphasis added by *Morgan* panel]." "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

*Morgan*, 335 Fed. App'x at 469-70, *citing Schultea*, 47 F.3d at 1432-34. Because the constitutional right at issue in *Morgan* (the obligation of prison officials to protect prisoners from violence at the hands of other inmates) was clearly established and because the question whether the defendant subjectively knew of an excessive risk of serious harm and decided to disregard it is a question of fact over which the panel had no jurisdiction, the panel needed to decide only whether the plaintiff alleged sufficient facts to state a plausible claim against the individual defendant. 335 Fed. App'x at 471 and 472, *citing Schultea*, 47 F.3d

-20-

at 1434 (requiring the plaintiff to support a "claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts"(emphasis added)). It found a "failure of specificity," but decided that was not the plaintiff's fault "because he has not yet had the benefit of discovery, and is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support." The panel further found that the omitted facts fell "squarely" within the category of facts "peculiarly within the knowledge of defendants." *Id.* at 472, *citing Schultea*, 47 F.3d at 1432. Emphasizing that "the issue should be resolved as early as possible" because "the protection afforded by qualified immunity applies to the lawsuit itself and not merely to liability," the panel followed *Schultea* and allowed limited discovery carefully tailored to the defense of qualified immunity. *Id.* at 472-73. It "vacate[d] the district court's denial of qualified immunity and remand[ed] the case for discovery limited to that issued" and "instruct[ed] the district court to carry the issue of qualified immunity and decide it anew once that discovery is complete." *Id.* at 473 .

A denial of qualified immunity at the motion to dismiss stage, to the extent that it turns on a matter of law, is an appealable final decision under 28 U.S.C. § 1291 because qualified immunity is immunity from suit and, necessarily, shields the official from the

-21-

burdens of discovery. *Ashcroft v.* Iqbal, 129 S. Ct. at 1946; *Porter v. Valdez*, 424 Fed. App'x 382, 385 (5th Cir. 2011), *citing Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, *4 (5th Cir. Jan. 17, 2002)("Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost.").

As opined in *Bailey v. Dallas County*, Civ. A. No. 3:09-CV-0865-K, 2012 WL 1033502, *15 (N.D. Tex. Mar. 28, 2012), about the Eighth Amendment inmate's right of access to adequate medical care,

> [A]t the time of the incident, the law was clearly established that a prisoner had a constitutionally protected right to be free from a prison official's deliberate indifference to the prisoner's serious medical needs. See [Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006)](law clearly established that prisoner's Eighth Amendment rights violated when prison official refuses to treat him, ignores his complaints, intentionally treats him incorrectly, or acts similarly showing a wanton disregard for any serious medical needs); *see also Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982)(state official who knowingly deprives a prisoner of necessary medical treatments violates his constitutionally protected rights is "neither a recent nor novel proposition of constitutional law.").

The real party in interest in a suit against a person in his official capacity is the governmental entity and not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'"),

*citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978).

Eleventh Amendment immunity must be resolved before the court reaches the merits of a suit. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285-86 & n.9 (5ᵗʰ Cir. 1999). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state. *Id., citing Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Nor are a State's agencies subject to suit in federal court, absent waiver of immunity by the State. *Id. See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984)("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The jurisdictional bar is applicable, regardless of the nature of the relief sought, e.g., damages or prospective relief. *Id.; P.R.*

*Aqueduct & Sewer Authority*, 506 U.S. 139, 146 (1993).[5]

Although Congress has the power to abrogate immunity through the Fourteenth Amendment, Congress has not expressly waived sovereign immunity for § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Moore v. Texas*, No. 3:11-CV-0749-M-BH, 2011 WL 6968294, *2 (N.D. Tex. Dec. 14, 2011), *citing inter alia Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Although a State may waive its immunity by consenting to suit, Texas has not waived its immunity by consenting to suit in federal court in the Texas Tort Claims Act for § 1983 claims. *Id*. *See also Bailey v. Dallas County*, Civ. A. No. 3:09-CV-0865-K, 2012 WL 1033502, *26 (N.D. Tex. Mar. 28, 2012), *citing Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009)(Texas Tort Claims Act, Texas Civ. Prac. & Rem. Code Ann. § 101.001, *et seq.*,[6] does not apply to

---

[5] An exception is the *Ex parte Young* doctrine, which allows federal jurisdiction over a suit against a *state official* in his official capacity in certain situations where the suit seeks only prospective relief in order to end a continuing violation of federal law. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996), *citing Ex Parte Young*, 209 U.S. 123 (1908). *Ex parte Young* "has no application against . . . States and their agencies." *Cox v. Texas*, 354 Fed. App'x. 901, 902 (5th Cir. Dec. 3, 2009), *citing Cox v. city of Dallas, Tex.*, 256 F.3d 281, 307 (5th Cir. 2001); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).

[6] The Texas Tort Claims Act waives immunity for three kinds of claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal property or real property; and (3) claims arising from premise defects. Tex. Civ. Prac. & Rem. Code §§ 101.021(1) and (2) and 101.022. The Texas Tort Claims Act does not apply to claims arising out of an intentional

claims arising out of intentional torts or claims of failure to train or supervise), and *Holland v. City of Houston*, 41 F. Supp. 2d 678, 711 (S.D. Tex. 1999)(claims involving medical care and failure to train do not involve tangible property so sovereign immunity is not waived under the Texas Tort Claims Act).

Furthermore, the Fifth Circuit has held that the Texas Department of Criminal Justice ("TDCJ") "is deemed an instrumentality of the state [of Texas] operating as its alter ego in carrying out a public function of the state and is immune from suit under the Eleventh Amendment." *Harris v. Angelina County, Tex.*, 31 F.3d 1052, 1054 (5th Cir. 1998). *See also Aguilar v. TDCJ*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Cox v. Texas*, 354 Fed. App'x 901, 902 (5th Cir. Dec. 3, 2009).

The Eleventh Amendment does not grant immunity when a section 1983 claim is asserted against a state official in his personal capacity. *Hafer v. Melo*, 502 U.S. 21 (1991).

### Murray's Motion to Dismiss (#25)

Murray moves for dismissal on the following grounds: (1) Plaintiffs fail to state an Eighth Amendment claim against him because they fail to demonstrate that he was deliberately indifferent, i.e., that he had knowledge of a substantial risk of

---

tort, Tex. Civ. Prac. & Rem. Code § 101.057(2), or negligent failure to train, § 101.021(2). Claims of negligent hiring, training and supervision do not fall within the limited waiver. *Kesler v. King*, 29 F. Supp. 356, 377 (S.D. Tex. 1998)

serious harm to Slocum and disregarded that risk; (2) Plaintiffs rely on an inapplicable theory of vicarious liability and fail to show that Murray personally participated in Slocum's medical treatment; (3) Plaintiffs fail to overcome Murray's qualified immunity defense by showing that his actions were unreasonable under the circumstances; and (4) Murray shares the State of Texas' Eleventh Amendment immunity and sovereign immunity in actions against him in his official capacity as Director of the University of Texas Medical Branch ("UTMB").

Regarding the first factor, Murray submits a copy of medical records provided to Plaintiffs in Initial Disclosures (Attachment A) for the limited purpose of demonstrating that Plaintiffs' Second Amended Complaint still fails to address with specificity the facts that are relevant to the section 1983 claim against Murray. The records show that Slocum was seen by a physician and licensed medical personnel while at the prison unit. Plaintiffs fail to allege facts showing Murray was culpable, but have only conclusorily asserted that insulin was denied and therefore Murray as Director committed a constitutional violation. They do not allege facts indicating that he was aware of the facts wherein insulin was denied or from which the inference could be drawn that a substantial risk of harm existed, nor that Murray drew that inference.

As a matter of law Plaintiffs cannot impose individual

liability on Murray as Medical Director for the Department of Corrections or Director of Health Services at UTMB under Section 1983 through a theory of *respondeat superior* or vicarious liability.  *Monell,* 436 U.S. at 691 ("[W]e concluded that a municipality [or local government] cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006). The failure to train and failure to supervise claims apply to local entity liability such as a municipality or county, entities that, unlike the state and its agencies, do not have Eleventh Amendment immunity.  *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)(since under § 1983 a government official can be held liable only for his own misconduct (no *respondeat superior* liability), the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy and requires a showing of more than one incident).  While a local governmental entity may be held liable under a theory of failure to train or to supervise employees through its policies or customs, Plaintiffs have failed to allege the requisite factual elements for such a claim.  Moreover they cannot impose such liability based on the single instance of Slocum's death.

Plaintiffs have failed to plead any personal participation by Murray for individual liability.

-27-

Moreover Murray insists he is entitled to qualified immunity, which cannot be overcome by superficial pleadings that simply state that a particular right has been violated and any reasonable person would know not to violate it. *Ashcroft*, 129 S. Ct. at 1949-50(To be sufficient, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; "a formulaic recitation of the elements of a cause of action" or "facts [that] do not permit the court to infer more than the mere possibility of misconduct" fail to satisfy the pleading requirements of Rule 8.). Plaintiffs have failed to plead facts and circumstances regarding Murray's conduct surround his alleged decision that caused Slocum's death nor shown his personal participation in Slocum's medical treatment. They have not shown that his conduct was objectively unreasonable. Murray maintains he is entitled to judgment as a matter of law because Plaintiffs' complaint fails to address Murray's qualified immunity.

Finally Murray argues that he is entitled to the same Eleventh Amendment and sovereign immunity as the state in Plaintiffs' suit against him as the UTMB Medical Director because UTMB is a state entity. As noted the State of Texas has waived its sovereign immunity in state court in only limited circumstances, not applicable here. *University of Texas Medical Branch at Galveston v. York*, 871 S.W. 2d 175 (Tex. 1994). Murray contends that his

-28-

Eleventh Amendment and sovereign immunity bars the Court from subject matter jurisdiction over him in his capacity as UTMB Medical Director.

### Livingston and Simpson's Motion to Dismiss (#27)

Like Murray, Livingston and Simpson argue they are entitled to dismissal for the following reasons: (1) Plaintiffs have failed to state an Eighth Amendment claim against them because Plaintiffs have failed to plead facts showing that either Defendant had knowledge of a substantial risk of serious harm to Slocum and disregarded that risk, as required under *Farmer v. Brennan*; (2) Plaintiffs rely on the inapplicable theory of vicarious liability to impose individual liability on Livingston and Simpson and fail to show that either participated in Slocum's medical treatment, nor do they show municipal liability for failure to train or supervise employees because a single instance fails to give notice of a pattern and practice of similar incidents; (3) Plaintiffs have failed to overcome Livingston and Simpson's affirmative defense of qualified immunity by showing that either acted unreasonably under the circumstances; and (4) they share the state's Eleventh Amendment immunity and sovereign immunity in actions against them as Executive Director and Warden in their official capacities at Texas Department of Corrections.

### Plaintiffs' Combined Response to Motions to Dismiss (#33)

Plaintiffs' response alleges numerous facts not in their

Second Amended Complaint, or any of their complaints, and relies heavily on the content of the attached deposition of inmate Ivan Ortiz (Exhibit E), neither of which the Court considers under Rule 12(b)(6)[7] and are not relevant to their motion under Rule 12(b)(1). Moreover because they were not asserted before, Defendants have not had notice or an opportunity to respond to the new allegations.

### Plaintiffs' Motion for Nonsuit (#44)

Plaintiffs move for nonsuit on the grounds that the Court denied (#37) their motion for leave to file a Third Amended Complaint (#31) to add a claim under Title II of the Americans With Disabilities Act of 1990, to which they maintain qualified and sovereign immunity do not apply.  They state that they will seek to refile their ADA claim in state court.

In opposition, Livingston, Murray and Simpson point out that initial disclosures have been exchanged, Defendants have responded to Plaintiffs' First Request for Interrogatories and First Request for Production of Documents, the deposition of a non-party witness has been taken, and two motions to dismiss are fully briefed and pending, all related to the current complaint.  Furthermore, if this action is nonsuited and if Plaintiffs then file their ADA

---

[7] The Court chooses not to give notice and convert this motion to one for summary judgment under Rule 56 because discovery is not complete and this case has been stayed to permit the Court to address the affirmative defenses which would preclude discovery if applicable.  Much of Ortiz's deposition is conclusory and to that extent inadmissible anyway.

claim in state court, Defendants intend to remove it, incurring unnecessary cost and expense to end up where they started, in federal court.  Defendants argue that they will be prejudiced if the Court grants dismissal.  Their motions to dismiss were filed almost two months before Plaintiff's motion to nonsuit and should be ruled on first.  Defendants are entitled to finality regarding Plaintiffs' claims.  Dismissal would be unfair to Defendants because Plaintiffs have been given, and taken, more than an adequate opportunity to amend and have been allowed limited discovery.  Defendants emphasize that the primary purpose of Federal Rule of Civil Procedure 41(a)(2)[8] is "to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990), *citing* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364 at 165 (1971).[9]

---

[8] Rule 41(a)(2) states in relevant part, "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

[9] The Court notes that Wright and Miller continue, in a portion omitted by Defendants,

> Accordingly the courts have generally followed the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit.  It is not a bar to dismissal that plaintiff may obtain some tactical advantage thereby.

*Id.*

If the Court nevertheless decides to grant the nonsuit, with supporting documentation Defendants ask the Court to impose, as terms or conditions necessary to protect them under Federal Rule of Civil Procedure 41(a)(2), an award of reasonable and necessary attorney's fees for Assistant Attorney General Susan Werner's services in the amount of $6000 and costs in the amount of $463.22. They provide a supporting affidavit.

### Court's Decision

The Court observes that Plaintiffs, who are and have been represented by counsel since this action was commenced on February 9, 2011, have already had "three bites of the apple": a Complaint (#1), filed on February 9, 2011 and a First Amended Complaint (#3),[10] filed on February 18, 2011, both suing only the State of Texas; and a Second Amended Complaint (#17), filed on August 24, 2011, dropping the State of Texas as a Defendant and suing the current three Defendants. Plaintiffs moved for leave to file their Second Amended Complaint (#14) two weeks after the State of Texas had filed a motion to dismiss on Eleventh Amendment Immunity (#13).

---

[10]   Moreover the State of Texas had filed a motion to dismiss based on Eleventh Amendment immunity (#13) which, after Plaintiffs' unopposed motion to amend again to drop claims against the State of Texas and add the current Defendants, was granted and the Second Amended Complaint was filed (#14, 16), the Court mooted.   Nevertheless, in response to the Second Amended Complaint, Murray, Livingston and Simpson, sued in both their official and individual capacities, also asserted sovereign immunity under the Eleventh Amendment in their official capacities.

Their response to the State of Texas' motion was that their motion for leave to amend "would effectively nonsuit the State of Texas and add different individual defendants," while the granting of their motion for leave and the filing of their Second Amended Complaint would moot the State's motion. #15 at p.1. Simpson filed an answer to the Second Amended Complaint on September 6, 2011 (#18), Murray on September 15, 2011 (#19), and Livingston on October 3, 2011 (#21).

The first docket control schedule in this case was entered on June 1, 2011, which *inter alia* established a deadline of August 2, 2011 for amending pleadings. Thus Plaintiffs' motion for leave to amend and file their Second Amended Complaint, although unopposed, was filed after that deadline. In response to a joint motion for extension of time (#28) filed on October 20, 2011 requesting a sixty-day extension of the deadlines for discovery, dispositive motions and trial, the Court entered an amended docket control schedule (#30) on October 21, 2011, but it did not change the deadline for amending pleadings and, indeed, no party had asked for such a modification. Also on October 20, 2011 Defendants filed their pending motions to dismiss (#25 and 27).

On October 25, 2011 Plaintiffs filed an opposed motion for leave to file a Third Amended Complaint (#31) to add a claim under Title II of the Americans With Disabilities Act of 1990, which the Court denied (#39) because of the expiration of the docket control

schedule's deadline for amendment two months earlier, not to mention its allowing the filing of the Second Amended Complaint out of time, because of the two pending motions to dismiss the Second Amended Complaint, and because of futility as to an ADA claim against Defendants in their individual capacity.[11]

To further explain the reason for its decision to deny Plaintiffs another amendment, as this Court pointed out in *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, ___ F.R.D. _ ___, MDL No. 1446, Civ. A. Nos. H-01-3624, H-04-4520, 2011 WL 5967239, *1-2 (S.D. Tex. Nov. 29, 2011), there is a key distinction between amendment pursuant to Federal Rule of Civil Procedure 15(a) and 16(b).  Rule 15(a) provides in relevant part,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may amend the party's pleading only by leave of court or by written consent of the adverse party; and shall be freely given when justice so requires.

Under this rule, a court has discretion in deciding whether to grant leave to amend.  *Foman v. Davis*, 371 U.S. 178, 181 (1962).  Since the language of the rule "'evinces a bias in favor of

---

[11] As correctly pointed out by Defendants, the ADA does not allow for liability against individuals. *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999); *D.A. v. Houston I.S.D.*, 716 F. supp. 2d 603, 611 (S.D. Tex. 2009). *See also Gardea v. Naik*, Civ. A. No. H-09-1467, 2011 WL 1103434, *11 (S.D. Tex. Mar. 23, 2011); *Hay v. Thaler*, Civ. A. No. H-09-4075, 2011 WL 1237940, *2 (S.D. Tex. Mar. 7, 2011).

granting leave to amend,'" the court must find a "substantial reason" to deny such a request. *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.D. Tex. Aug. 29, 2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5thCir. 2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).  Factors for the court to consider in determining whether there is a substantial reason to deny a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).  While Rule 15(a) does not establish a time limit for filing a motion for leave to amend, "'at some point, time delay on the part of a plaintiff can be procedurally fatal." *Smith v. EMC Corp.* 393 F.3d at 595, *quoting Whitaker v. City of Houston* 963 F.2d 831, 836 (5th Cir. 1992), *in turn quoting Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).  If there is substantial delay, the plaintiff bears the burden of demonstrating that it was due to oversight, inadvertence or excusable neglect.

*Id., citing Gregory,* 634 F.2d at 203.

Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order's deadline to amend has expired, as was the case here with Plaintiffs' motion for leave to file Third Amended Complaint. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009). According to Rule 16, which employs a stricter standard than Rule 15(a), once a scheduling order has been entered, "it may be modified only for good cause and with the judge's consent." The good cause standard requires the party seeking leave to amend to "'show that the deadlines cannot reasonably be met, despite the diligence of the party needing the extension.'" *Marathon*, 591 F.3d at 470, *quoting S&W Enters., LLC v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir, 2003)(*quoting* 6A Charles Alan Wright, et al., *Federal Practice and Proc.* § 1522.1 (2d ed. 1990)).  "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, Civ. A. No. 3:07-CV-1816-D, 2009 WL 305994, *1 (N.D. Tex. Feb. 9, 2009).

In determining whether good cause exists, the court should consider four factors:  "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in  allowing the amendment; and

-36-

(4) the availability of continuance to cure such prejudice.'" *Id.,
quoting Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d
541, 546 (5th Cir. 2003)(*citing S&W Enterprises*, 315 F.3d at 536).
Only if the movant demonstrates good cause for the modification
will the more liberal standard of Rule 15(a) then apply to the
district court's decision whether to grant or deny leave to amend.
*S&W Enterprises*, 315 F.3d at 536.

Not only did Plaintiffs and their counsel here fail to show
that the deadline for amended pleadings could not reasonably have
been met, but given the nature of Plaintiff's allegations as far
back as the first Complaint, there is no reason why they did not
know or should have known under well established law that they
might be able to bring an ADA claim against the State in the first
two complaints or, in the Second Amended Complaint, against Murray,
Livingston and Simpson in their official capacities under the ADA,[12]
but not under the Eighth Amendment and § 1983. *See, e.g., De
Franceschi v. BAC Home Loan Servicing, LP*, No. 11-10860, 2012 WL
1758597, *2(5th Cir. May 17, 2012). *See also Sosa v. Airport
Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)(denying leave
to amend under Rule 16(b) when the facts were known to plaintiff
when he filed the first complaint); *Parker v. Columbia Pictures
Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000)(same). "Disregard of

---

[12] *See Gardea v. Naik*, 2011 WL 1103434, *12 (S.D. Tex. Mar.
23, 2011).

-37-

the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airport Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Here each time a defendant raised a black letter law defense to Plaintiffs' latest allegations, Plaintiffs sought to avoid it by seeking to amend their pleadings.

Even if they had shown diligence in moving to replead for a fourth time, under Rule 15(a) the Court finds there was undue delay and prejudice to Defendants, who have filed three motions to dismiss before Plaintiffs' latest request to amend and who have proceeded into discovery without notice of an ADA complaint. *See also Pope v. MCI Telecomms. Corp.* 937 F.2d 258, 263 (5th Cir. 1991)(denying under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on the same facts).

The same facts also apply to Plaintiffs' current motion to nonsuit after having filed three complaints, participated in discovery, and been confronted with the individual Defendants' answers and motions to dismiss. Given that the purpose of

-38-

dismissal under Rule 41(a)(2) is to avoid unfair prejudice to the other side, among the recognized examples of prejudice is when a party moves to dismiss to seek to avoid an imminent adverse ruling. *In re FEMA Trailer Formaldahyde Products Liability Litig.*, 628 F.3d 157, 162-63 (5th Cir. 2010), *citing Oxford v. Williams Cos.*, 154 F. Supp. 2d 942, 951 (E.D. Tex. 2001). *See also Radiant Technology Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203 (N.D. Tex. 1988)(denial of a Rule 41(a)(2) motion to dismiss "should be reserved only for those cases where the defendant demonstrates: (1) that dismissal will preclude the court from deciding a pending case or claim-dispositive motion; or (2) that there is an objectively reasonable basis for requesting that the merits of the action be resolved in this forum in order to avoid legal prejudice."); *Kumar v. St. Paul Surplus Lines Ins. Co.*, Civ. A. No. 3:10-CV-166-), 2010 WL 1946341, *2 (N.D. Tex. May 12, 2010)(same). Here, as will be discussed *infra*, some defenses raised in the motions to dismiss under 12(b)(1) are dispositive as a matter of law. Furthermore, as noted, a dismissal without prejudice here would at most result in Plaintiffs' refiling in state court and a subsequent removal of their ADA claim against Defendants in their official capacity back to this Court, in a waste of time and resources. Accordingly, the Court denies the motion for nonsuit. For reasons indicated, the Court previously ruled that Plaintiffs' motion for leave to amend again is denied.

As noted *supra*, if a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, " the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, quoting Hitt v. City of Pasadena*, 561 F.2d at 608.  Thus the Court addresses the Eleventh Amendment immunity issue in the motions to dismiss under 12(b)(1).

Defendants are correct that they are entitled to Eleventh Amendment immunity for claims against them in their official capacity under § 1983.  Congress has not waived sovereign immunity for § 1983 suits.  *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)("neither a state nor its official acting in their official capacities are 'persons' under § 1983"); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)(holding that "the Eleventh Amendment bars recovering § 1983 damages from TDCJ officers in their official capacities").  Defendants are employed as TDCJ officers or as health care providers employed by UTMB, and  UTMB and TDCJ are state agencies, immune from a suit for money damages under the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 655 F.3d 625, 630 (5th Cir. 2011), *citing* Tex. Gov't Code Ann. § 61.003(5); *id.* § 572.002(10)(A); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998)(extending Eleventh Amendment to TDCJ),

*citing Harris v. Angelina County, Texas*, 31 F.3d 331, 337–38 n.7 (5th Cir. 1994(("As an instrumentality of the state, the TDCJ-ID is immune from a suit for money damages under the Eleventh Amendment"); *Aguilar v. TDCJ*, 160 F.3d 1052, 1054 (5th Cir. 1998)(Extending immunity to TDCJ's officers acting in their official capacities).[13]

As for Rule 12(b)(6), the complaint is nearly devoid of factual allegations and instead is composed largely of legal conclusions. Plaintiffs have improperly pleaded *respondeat superior* liability against the three named Defendants, who, under the allegations made, were not shown to be personally involved in the denial of access to medical care, specifically insulin, to Wesley Slocum. As a matter of law Plaintiffs cannot state a claim against these individuals based on a vicarious liability theory under § 1983. *See, e.g., Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)("Only the direct acts or omissions of government officials, not the acts os subordinates, will give rise to individual liability under § 1983); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

---

[13] Nor does the *Ex Parte Young,* 209 U.S. 123, exception for a claim against state officials for prospective injunctive relief to prevent a continuing violation of federal law apply here since Wesley Slocum is deceased. Besides the complaint seeks only monetary damages.

Defendants have asserted qualified immunity defenses, so the burden is on Plaintiffs to negate that defense and to show, satisfying heightened pleading standards, that Defendants were deliberately indifferent to Slocum's health and safety.  The Court must determine whether the facts alleged by the plaintiff set forth a violation of a constitutional right and whether the constitutional right was clearly established at the time of the alleged misconduct.  *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009.  For a claim of inadequate medical care in violation of the Eighth Amendment, Plaintiffs therefore must allege facts showing that each Defendant was deliberately indifferent, i.e., subjectively aware of facts from which the inference could be drawn that a substantial risk of harm to Slocum existed and that each Defendant actually drew that inference.  Each individual Defendant's entitlement to qualified immunity must be pleaded and examined separately.  *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 295 (5th Cir. 2000).  Plaintiffs have failed to do so in each Defendant's case.   They have not alleged facts showing that any of the three Defendants was aware of Slocum's problem, no less of facts that a substantial risk of serious harm existed, or that any of the three drew that inference, that any of the three failed to take reasonable measures to abate that risk, and that any of the three refused to treat Slocum or intentionally ignored his complaints.  "Deliberate indifference is

an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). *See also Rios v. City of Del Rio, Texas*, 444 F.3d 417, 420-21 (5th Cir. 2006)(In order survive a motion to dismiss, "a complaint must contain direct allegations pertaining to every material point necessary to sustain recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. . . . '[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient. . . . The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.' . . . Further, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. [citations omitted]'"), *cert. denied*, 549 U.S. 825 (2006).  "A prison official or prison doctor is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety.  *Harris v. Hermann*, 198 F.3d 153, 159 (5th Cir. 1999). Despite filing three complaints, Plaintiffs have failed to meet this well established standard of pleading.  Thus they have not stated a constitutional claim under the Eighth Amendment, so the Court does not need to address whether Defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions at issue.  The Court finds

-43-

Plaintiffs have failed to plead an Eighth Amendment violation so Defendants are entitled to qualified immunity on the inadequate medical care claim.

As noted earlier, for a supervisor's failure to train or supervise,[14] a plaintiff must allege facts showing that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). Here, too, Plaintiffs have failed to plead deliberate indifference as to any of the three Defendants, i.e., that each Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [also drew] the inference." *Id.* at 912, *quoting Farmer*, 511 U.S. at 837. Nor have they pleaded a pattern of similar violations to support their failure to train and/or supervise claim. *Estate of Davis*, 406 F.3d at 381, 383. Plaintiffs have failed to satisfy the heightened pleading standard to defeat Defendants' qualified immunity defense. Thus Defendants are entitled to qualified immunity.

## ORDER

Therefore for the reasons stated above, the Court

---

[14] Plaintiffs have not sued a local government entity or municipality for failure to train and/or supervise, but only individual defendants in their supervisory role.

ORDERS that the STAY is LIFTED.  The Court further

ORDERS that Plaintiffs' motion for nonsuit (#44) is DENIED.
Finally, the Court

ORDERS that Defendants' motions to dismiss for lack of
jurisdiction and failure to state a claim (#25 and 27) are GRANTED
as indicated in this Opinion and Order and that this case is
DISMISSED with prejudice.

**SIGNED** at Houston, Texas, this  8th  day of  June , 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE